IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


AMBER M. S.,[1]                                                              No. 6:18-cv-427-HZ

             Plaintiff,                                  OPINION & ORDER

      v.

COMMISSIONER, Social Security
Administration,

             Defendant.


HERNÁNDEZ, District Judge:

      Plaintiff brings this action for judicial review of the Commissioner's final decision denying, in part, her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family members.

1 - OPINION & ORDER

§ 1382(c)(3)). Because the Administrative Law Judge (ALJ) improperly ignored the medical opinion evidence of Dr. Gomes and improperly discounted lay witness testimony, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

## BACKGROUND

Plaintiff was born on December 18, 1979 and was thirty-two years old on December 3, 2012, the alleged disability onset date. Tr. 143, 157.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through December 31, 2017. Tr. 145. Plaintiff has at least a high school education and is unable to perform any past relevant work. Tr. 157. Plaintiff claims she is disabled based on conditions related to a L5-SI Posterior Lumbar Interbody Fusion. Tr. 367.

Plaintiff's benefits application was denied initially on September 30, 2014, and upon reconsideration on January 21, 2015. Tr. 143. A hearing was held before Administrative Law Judge B. Hobbs on November 3, 2016. Tr. 172–99. ALJ Hobbs issued a written decision on December 21, 2016, finding that Plaintiff was not disabled and entitled to benefits. Tr. 159. The Appeals Council declined review, rendering ALJ Hobbs' decision the Commissioner's final decision. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 11.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 145.

At step two, the ALJ determined that Plaintiff "had the following severe impairments: degenerative disc disease status post lumbar surgery; unspecified depressive disorder; unspecified anxiety disorder; and somatic symptom disorder. Tr. 145. The ALJ determined that Plaintiff's headaches and cervical spine disorders were not severe, and Plaintiff's fibromyalgia was medically non-determinable under SSR 12-2p. Tr. 146.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 146–48. In particular, the ALJ found that Plaintiff's physical conditions did not meet the requirements of Listing 1.04, 12.04, 12.06 or 12.07 and her mental impairments did not satisfy paragraph "C" of the applicable mental disorder listings. Tr. 147–48

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work except that she

> can never climb ladders, ropes, or scaffolds. The claimant can only occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. The claimant can tolerate no exposure to extreme cold, extreme vibration, and hazards such as machinery and unprotected heights. Due to pain, side effects of medications, and mental impairments, the claimant can understand, remember, and carry out only short and simple instructions and only make simple work-related judgments and decisions.

Tr. 148.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 157.

At step five, the ALJ relied on the testimony of a vocational expert to find that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 158. Accordingly, the ALJ concluded that the Plaintiff was not disabled. *Id.*

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff raises four issues on appeal. She argues the ALJ erred by improperly rejecting (1) the medical opinion evidence of Dr. Gomes, (2) Plaintiff's subjective symptom testimony, (3) the other source testimony of FNP Kernan and PT Toberer, and (4) various lay witness statements.

**I.   Dr. Gomes, PhD**

Dr. Gomes examined Plaintiff in September 2014. Tr. 154, 571. He opined, in relevant part, that Plaintiff's "ability to maintain regular attendance in the workplace is: Markedly impaired. Her daily schedule and activities has decreased significantly since her back surgery." He also noted that Plaintiff's "ability to complete a normal workday/workweek without

interruptions from a psychiatric condition is: Mildly impaired. Her work interruptions will be from her post-surgery back pain." Tr. 577. The ALJ gave Dr. Gomes' opinion great weight. Tr. 155. However, he did not include any attendance-related limitations in Plaintiff's RFC, or incorporate these limitations in hypotheticals to a vocational expert (VE). Plaintiff argues this was error.

In response, Defendant argues that (1) Dr. Gomes' opinion on Plaintiff's ability to maintain regular attendance is not inconsistent with Plaintiff's RFC, (2) Dr. Gomes is not qualified to opine on Plaintiff's physical condition, and (3) any error is harmless. The Court does not agree. Defendant does not explain how the opinion is consistent with the RFC, which makes no reference to any attendance-based limitations. Moreover, while Defendant correctly notes that this limitation was based on pain stemming from physical allegations, and Dr. Gomes did not perform a physical examination or have the expertise to do so, the ALJ did not rely on these reasons for rejecting this opined limitation. To the contrary, the ALJ included this "marked" impairment in his summary of the opinion and gave the opinion "great weight" without restriction. Tr. 154-55. A court cannot affirm a non-disability decision on grounds the ALJ did not invoke. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and [] 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r Social Sec. Admin*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Marked impairments in attendance are not inconsequential to the ultimate nondisability determination. Therefore the error was not harmless.

## II. Plaintiff's Testimony

Plaintiff argues the ALJ improperly discounted her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quotation and citation omitted) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms."). An ALJ must include specific findings supported by substantial evidence and a clear and convincing explanation for discounting a claimant's subjective symptom testimony.

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household

chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," and did not identify evidence of malingering. Tr. 156. The ALJ then concluded that Plaintiff's daily activities were inconsistent with her reported symptoms, and that the objective evidence and medical opinion evidence did not support her claimed limitations. Tr. 149, 156.

1. **Activities of Daily Living**

An ALJ may discount a Plaintiff's testimony when it is inconsistent with her daily activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). As explained in *Orn*, there are "two grounds for using daily activities to form the basis of an adverse credibility determination:" where the activities contradict a plaintiff's own testimony, or where they meet the threshold of transferable work skills. *Id.*

Here, the ALJ described Plaintiff's testimony as follows:

[Plaintiff] reported that she was unable to do "normal" activities and she spends most of her day laying down (Exhibit 9E). She noted that some days she cannot get out of bed and she spends most of her time at home (Exhibit 7E). The claimant said that she has difficulties tending to her personal care needs, cooking, and shopping in stores and she no longer performs household chores or participate[s] in most of her former hobbies including horseback riding (Hearing Testimony & Exhibit 7E). The claimant indicated that her husband takes care of everything and he does the majority of care for their dog (Exhibit 7E). The claimant testified that if she takes a two-mile walk the next day she is in pain (Hearing Testimony).

Tr. 149.

The ALJ went on to conclude that:

Despite such allegations of disabling symptoms and limitations, the claimant can hike and walk two miles, use the elliptical machine, ride her bicycle, tend to her personal care needs without special reminders, feed her dog, brush and give treats to her horse, prepare meals, shop in stores, eat lunch with friends, go to barbeques, get along well with people,

remember to take her medications, manage her finances, and drive (Hearing Testimony & Exhibits 7E; 4F).

*Id.*

There is no evidence to suggest that Plaintiff's activities are "'transferable' to a work setting nor proof that [Plaintiff] spent a 'substantial' part of her day engaged in transferable skills." *See Orn*, 495 F.3d at 639 ("The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.").

The Court also does not see how these activities contradict Plaintiff's own testimony. For example, the ALJ does not explain how Plaintiff's complaints of back pain relate to her ability to "brush and give treats to her horse," or "tend to her personal needs without special reminders." Other activities are simply described without context for the limited nature in which they are performed. For example, while Plaintiff stated she could walk two miles at a time, she also said that these walks were both preceded and followed by icing and sitting or laying down. Tr. 388. While Plaintiff said she can still drive, she qualified that answer by noting she only drives when she's alone and that "[d]riving can sometimes be difficult due to [her] pain." Tr. 386. The ALJ noted that Plaintiff can "prepare meals," while Plaintiff actually reported that her mom or husband prepare 95% of the meals, that she helps 2-3 times per week for 15-30 minutes total, and that she then has to sit and ice her back. Tr. 385.

Moreover, the Court notes that while Plaintiff reported using an elliptical machine for 30 minutes in a day, she also reported that such activity was again preceded and followed by icing and laying down. Tr. 384. She also noted that this regimen was recommended by her physical therapist to combat the very back pain described in her subjective symptom testimony. Tr. 384. Similarly, while Plaintiff stated she could walk two miles at a time, she also noted that her

surgeon told her to walk following surgery, and that after these walks she has to "sit or lie down with ice." Tr. 388. Plaintiff's adherence to a prescribed exercise regimen to improve the very pain at issue can hardly be used against her. *See Haines v. Apfel*, 1999 WL 694016, *9 (D. Or. Aug. 4, 1999). The ALJ therefore erred in relying on Plaintiff's activities of daily living.

Even though the ALJ's reliance on Plaintiff's activities of daily living was in error, the Court finds that the ALJ's other reasons for discounting Plaintiff's symptom testimony—discussed below—are sufficient to uphold the ALJ's overall symptom evaluation. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that error by an ALJ as to one basis for adverse credibility determination is not fatal to the overall determination if the ALJ gave other reasons which are supported by substantial evidence in the record). Therefore, the error was harmless.

### 2. Medical Evidence

An ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony; however, this testimony cannot be rejected solely because it is not fully corroborated by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) ("Once a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). An ALJ may also rely on inconsistent medical opinion evidence in discounting this testimony. *Carmickles v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161(9th Cir. 2008).

Here, the ALJ relied on both objective medical evidence and inconsistent medical opinion evidence. Tr. 149, 151-56. First, the ALJ concluded that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." Tr. 149. For example, in 2015, Dr. Gallo reviewed Plaintiff's lumbar CT and noted "a solid interbody and posterior lateral arthrodesis at L5-S1 with good placement of the hardware and no significant neurologic compression at that level or any other level." Tr. 658. The ALJ also cited physical examinations that revealed "full, equal, and normal (5/5) strength in her lower extremities, +2/4 Achilles and patella reflexes, and no clonus." Tr. 150.

Second, the ALJ concluded that Plaintiff's testimony was inconsistent with some medical opinion evidence. Tr. 151-56 (after summarizing and assigning weight to the medical opinion evidence, the ALJ noted that "after careful consideration of the evidence . . . the claimant's statements concerning the intensity persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."). For example, Dr. Holan testified that Plaintiff could perform light work, but was limited to standing and/or walking up to two hours in eight-hour day. Tr. 151, 188. Dr. Heder examined Plaintiff in September 2014 and opined in part that Plaintiff could walk and sit up to six hours a day. Tr. 154, 582. State agency medical consultants opined that Plaintiff could perform a range of light work with postural limitations. Tr. 155. Dr. Duong opined that the objective medical evidence did not explain much of Plaintiff's subjective pain. Tr. 150, 650.

While Plaintiff points to other evidence in the record that supports her subjective symptom testimony, the Courts notes again that "[w]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591. Because the ALJ relied on objective medical evidence that did not fully corroborate Plaintiff's

pain testimony, as well as inconsistent medical opinion evidence, the ALJ did not err in his treatment of Plaintiff's subjective symptom testimony.

### III. Other Source Testimony

Plaintiff argues the ALJ erred in giving little weight to the opinions of nurse practitioner Kathryn Kernan, FNP and physical therapist Linda Toberer, PT. Nurse practitioners and physical therapists are not considered acceptable medical sources. *Smith v. Berryhill*, 2018 WL 2244707, *6 (D. Or. May 16, 2018). However, information from medical sources other than "acceptable medical sources" may still provide insight into "the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. The ALJ can consider several factors when evaluating the opinion of such sources, including: (1) length of relationship and frequency of contact; (2) consistency of opinion with other evidence; (3) quality of source's explanation for opinion; (4) any specialty or expertise related to impairment; and (5) any other factors tending to support or refute the opinion. *See id*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (because physician's assistant was not an acceptable medical source, ALJ could discount physician's assistant's opinion for germane reasons).

Here, the ALJ gave both opinions little weight for the same reasons: (1) they are not acceptable medical sources, (2) their opinions appeared "to be based at least partially on the claimant's own report," (3) the opinions were "not consistent with the objective medical evidence including diagnostic images showing the claimant had a solid interbody and posterior lateral arthrodesis at L5-S1 with good placement of the hardware and no significant neurological compression at any level (Exhibit 7F/2, 12)," and (4) "statements that a claimant is 'disabled,' 'unable to work,' or the like are not medical opinions but are administrative findings dispositive

of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate her statutory responsibility to determine the ultimate issue of disability." Tr. 153.

An ALJ may reject other source testimony that is premised on a plaintiff's "own subjective complaints, which the ALJ has already properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (finding this to be a *specific and legitimate* reason for rejecting a physician's opinion). Here, FNP Kernan stated that Plaintiff reported that her back pain "increases her fatigue and she is easily 'worn out' and pain is increased with even mild activity" Tr. 753. PT Toberer opined that Plaintiff "came out of her back surgery in 2012 with more pain than before the surgery," and "[s]he is able to walk a maximum of two blocks, but her pain increases and she has to go back to bed." Tr. 747. These observations are clearly based on Plaintiff's subjective complaints of pain. As discussed above, the ALJ addressed Plaintiff's pain testimony and did not err in rejecting the extent of it.

An ALJ may also reject other source testimony that is inconsistent with objective medical evidence in the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (finding that the ALJ provided a germane reason when he stated that lay witness testimony was inconsistent with the objective medical evidence). Here, the ALJ concluded that the opinions were not consistent with the objective medical evidence. For example, the ALJ again noted diagnostic images showing the claimant had a solid interbody and posterior lateral arthrodesis at L5-S l with good placement of the hardware and no significant neurological compression at any level (Exhibit 7F/2, 12)." Tr. 153. Records also demonstrate that Plaintiff had a normal gait, +5/5

muscle strength, and negative straight leg raising tests. *Id.* The ALJ therefore provided germane reasons for affording little weight to the "other source" opinion testimony at issue.[3]

## IV. Lay Witness Testimony

Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114. Lay witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Id.* Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Germane reasons include conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). "An ALJ is not required to discuss every witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (citing *Valentine*, 574 F.3d at 694).

Here, Plaintiff provided fifteen lay-witness letters and a Third Party Function Report. Tr. 391-98, 445-66. In rejecting this testimony, the ALJ noted only that the witnesses'

> statements do not establish that the claimant is disabled, since they are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided was questionable. Moreover, significant weight cannot he given to their statements because, like the claimant's allegations, the statements were simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

Tr. 156.

---

[3] Because these are adequate reasons to discount this testimony, the Court offers no opinion as to the remaining reasons provided by the ALJ.

That a lay-witness is not "medically trained" is not a germane reason to reject testimony. This "lack of medical expertise is, by definition, why it is considered lay witness testimony." *Burlingham v. Comm'r Social Sec. Admin.*, 2014 WL 2213333, *5 (D. Or. May 28, 2014). It does not mean that witnesses are not competent to testify as to a plaintiff's conditions when, in fact, they may be in the best position to observe a plaintiff's symptoms and daily activities. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993).

Additionally, that "statements were simply not consistent with the preponderance of the opinions and observations by medical doctors in this case" is not sufficiently specific. The Court cannot determine *which* statements from *which* witnesses the ALJ found inconsistent with *which* opinions and observations from *which* medical doctors. The witnesses testified to a broad range of subjects, including Plaintiff's daily activities, her reports of pain, and her coping tactics. Tr. 391-98, 445-66 (noting for example that Plaintiff lays down and ices her back throughout the day, tr. 392, she no longer helps with house or yard work, tr. 393, she can't hold her niece and nephew, tr. 461, travel via car creates a lot of pain and discomfort, tr. 461-65, etc.). Given the detail provided in that testimony, the ALJ's general reference to inconsistencies with the "preponderance of the opinions and observations of medical doctors" is not a specific and germane reason to discount the testimony. *See Glover v.* Astrue, 835 F.Supp.2d 1003, 1013 (D. Or. 2011) (quoting *Edwards v. Astrue*, No. C08–5730BHS, 2009 WL 2855730, at *11 (W.D. Wash. Aug. 31, 2009) ("The ALJ's general reference to the bulk of the medical evidence of record, [is] too vague to constitute even a 'germane' reason for discounting the statements and comments of plaintiff's mother, in light of the level of detail she provided therein in regard to plaintiff's symptoms and functioning.")). The ALJ therefore erred in rejecting lay witness testimony.

## V. Remand for Benefits/Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency). Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Plaintiff argues that remand for an award of benefits is appropriate. As discussed above, the ALJ's decision included reversible errors. However, the record is not adequately developed in this case as to the extent and severity of Plaintiff's pain and the impact of that pain on her ability to work. While Dr. Gomes opined that Plaintiff has marked impairments in her ability to maintain regular attendance, it is unclear to the Court what information this limitation is based on and whether Dr. Gomes is qualified to opine on it. The ALJ must also reevaluate the written

statements provided by lay witnesses and provide legally sufficient reasons for rejecting them, if applicable. The Court therefore declines to remand this case for the payment of benefits.

CONCLUSION

The decision of the Commissioner is reversed and remanded for further administrative proceedings.

IT IS SO ORDERED.

Dated this 27 day of May, 2019.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge